**STEIN et al. v. LAWRENCE et al.**

No. 8762—Opinion Filed Dec. 23, 1919.

(Syllabus by the Court.)

**1. Damages—Breach of Contract—Sufficiency of Evidence.**

Record examined, and held, that the evidence reasonably tends to support the judgment of the trial court.

# Stein v. Lawrence

## 2. Appeal and Error—Harmless Error.

Section 6005, Rev. Laws 1910, provides that no judgment shall be set aside or new trial granted on the ground of misdirection of the jury or improper admission or rejection of evidence, unless in the opinion of the court, after an examination of the entire record, it appears that such errors have probably resulted in a miscarriage of justice or constitute a substantial violation of a constitutional or statutory right. Held, that after a careful examination of the record it does not appear that the errors of this class complained of have probably resulted in a miscarriage of justice or constitute a substantial violation of a constitutional or statutory right.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action by E. L. Lawrence and another against N. Stein and others. Judgment for plaintiffs, and N. Stein and another bring error. Affirmed.

G. A. Paul, for plaintiffs in error.

Warren K. Snyder and Chas. L. Moore, for defendants in error.

KANE, J. This was an action for the recovery of a sum of money as damages, commenced by the defendants in error, E. L. Lawrence and Nannie Lawrence, against the plaintiffs in error, N. Stein and Annie Stein, and two other parties, Beckie Basin and N. Basin. Upon trial to a jury there was a verdict in favor of the plaintiffs against all the defendants, upon which a joint judgment was duly rendered. The Basins, not appearing below and not appealing from the judgment thus rendered against them, were made parties defendant in error in this court by the appealing plaintiffs in error, N. Stein and Annie Stein.

The petition filed in the cause alleged, in substance, that the defendants represented to the plaintiffs that they were the owners of forty acres of land of the value of about $1,000; that they were possessed of a fee-simple title thereto, free and clear of all encumbrances except a mortgage of $50; that the defendants proposed or offered to trade said land to the plaintiffs for an automobile, and if said trade was effected they would convey the title to said land to the plaintiffs by a good and sufficient warranty deed; that plaintiffs, acting and relying upon said representations, parted with possession of said automobile by delivering the same to the defendants; that after the delivery of said automobile to said defendants they sold and delivered the same to a third person; that thereafter the plaintiffs requested the defendants to execute said warranty deed to

said land, which said defendants refused to do, but instead thereof they executed and tendered a quitclaim deed, which the plaintiffs refused to accept; that upon the discovery that the instrument executed by the defendants was a quitclaim deed, plaintiffs tendered the same back to the defendants, and upon their refusal to carry out their contract in relation to making a warranty deed to said land commenced this action. It was also alleged that defendants had no title to the land involved in the trade, and had no authority to convey the same to the plaintiffs, all of which was well known to the defendants. The defense was a general denial.

While counsel for plaintiffs in error states his grounds for reversal under four "propositions", in the view we take of the case it is only necessary to notice in detail the third proposition, viz.:

"The most glaring errors which were committed in the trial of this case below were in the overruling of the demurrer to the evidence and the refusal to give instructions requested by the defendants Stein and Stein, seven in number, heretofore set out at length, and found at pages 155 and 158 of the record."

In presenting these propositions counsel says:

"It is a remarkable situation here, that one who made no representations, entered into no contracts, and who did not authorize or ratify any misrepresentations, could be or should be held liable in fraud and deceit because of the acts of another. If we were to assume that there should be liability on the part of Mr. Stein and his wife, then there must be some basis in law and in fact upon which such liability must be established."

This argument is based upon the assumption that there was no evidence adduced at the trial tending to show that Mr. Stein was in any way a party to the negotiations which led up to the trade, which concededly were held between Lawrence and Basin. In this we are unable to agree with counsel.

The evidence shows without dispute that the land was owned jointly by Stein and Basin, the legal title being in Stein. While it is quite true that up to a certain point Basin negotiated the trade with Lawrence, still, as we view the record, he always purported to be negotiating for himself and Stein. Basin told Lawrence, which was true, that the legal title to the land was in Stein and that they (he and Stein) would execute a warranty deed conveying the land to Lawrence in exchange for the automobile. Lawrence testified that it was upon the strength of these representa-

tions that he turned the automobile over to Basin. That Basin pretended to be acting for Stein as well as for himself is clearly apparent from the testimony of Mr. Lawrence relating to a conversation which took place between Lawrence and Basin, after the former discovered that Basin had transferred the automobile to a third party. Lawrence testified that he met Basin on the street and, after mentioning the transfer of the car, told him that if the deed was ready he wanted to close the trade up. Basin's answer to this request, as testified by Mr. Lawrence, was as follows:

"He said it was absolutely good, that Mr. Stein was behind it and Mr. Stein was worth fifty thousand dollars and would not attempt to do anything with the machine—that a man of Mr. Stein's standing and worth could not do anything crooked, for he said that Stein was worth fifty thousand dollars."

In these circumstances it seems to us that the only question of any serious difficulty is whether there is any evidence adduced at the trial reasonably tending to show that Basin was authorized to speak for Stein. While it is true that practically all of the conversations leading up to the trade were between Lawrence and Basin, it appears with reasonable certainty that Basin had general authority from Stein to dispose of the land and to act for both himself and Stein. They owned the land jointly, and when Lawrence and Basin approached Stein for the purpose of having the warranty deed executed in pursuance of the previous negotiations Stein did not object to signing the deed on the ground that Basin had no authority to speak for him in the matter of disposal of the land, but upon the sole ground that he, Stein, "was not getting enough out of the land." Lawrence further testified that, although Stein at first objected to signing the warranty deed because "he did not think the machine was worth as much as the land, Basin prevailed upon him to sign the deed."

This conversation occurred between Stein and Basin, in the presence of Lawrence. Another circumstance occurring at this time is also significant of the relation existing between Stein and Basin. When Lawrence and Basin approached Stein as above related, Basin had in his possession a warranty deed drawn in blank and ready for signature. After Basin prevailed upon Stein to sign the warranty deed, Stein and Basin took the same deed and went into the office of a nearby notary public for the avowed purpose of signing it and having the same acknowledged. In the meantime Lawrence remained upon the street, where the foregoing conversation

occurred. In a short time Stein and Basin returned and handed Lawrence an envelope containing some sort of an instrument, without saying anything about its nature. Lawrence, without examining the contents of the envelope, placed the same in his pocket and went home where he immediately discovered that the instrument enclosed in the envelope was a quitclaim deed, and not the warranty deed Stein and Basin agreed to sign. Immediately upon discovering that the deed delivered to him was a quitclaim deed Lawrence returned the same to Stein and Basin, and upon their refusal to execute a warranty deed this action followed.

In addition to this, there was also evidence showing that the title of Stein and Basin in the land was defective and that they were at no time in a position to convey a fee-simple title therein to Lawrence or any other person.

We think this evidence reasonably tends to sustain the verdict of the jury in favor of Lawrence. If, as we believe it does, the evidence tends to show that Basin was authorized to act for Stein in the matter of the disposal of this land, then these two parties would be jointly liable to Lawrence, as the trial court held. We are, however, unable to find any evidence in the record tending to fasten any liability upon Beckie Basin or Annie Stein, and the judgment rendered should be modified so as to exclude them from its operation.

The questions presented for review under the remaining propositions relate to alleged errors of the court in the admission or rejection of evidence, or in the refusal to give certain instructions requested by the defendants.

Section 6005, Rev. Laws 1910, provides that no judgment shall be set aside or new trial granted on the ground of misdirection of the jury or improper admission or rejection of evidence, unless in the opinion of the court, after an examination of the entire record, it appears that such errors have probably resulted in a miscarriage of justice or constitute a substantial violation of a constitutional or statutory right.

It is sufficient to say of these assignments of error that, in the view we take of the case, it does not appear that the errors complained of have so resulted.

OWEN, C. J., RAINEY, V. C. J., and PITCHFORD, JOHNSON, HIGGINS, and BAILEY, JJ., concur.